UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE DAVIS-BYRD,

                Plaintiff,                         Civil Action No. 11-cv-15314

      v.                                District Judge Nancy G. Edmunds
                                    Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 22] AND PLAINTIFF'S
EX PARTE MOTION TO COMPLETE RECORD ON APPEAL [16]**

## I. RECOMMENDATION

Plaintiff Christine Davis-Byrd ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act. Both parties filed summary judgment motions (Dkts. 14, 22), which are referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 2.) For the reasons set forth below, the Court finds that the Commissioner's determination that Plaintiff is not disabled is supported by binding precedent and substantial evidence. Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED. It is further RECOMMENDED that Plaintiff's Ex Parte Motion to Complete Record on Appeal be DENIED because Plaintiff has failed to establish

1

that a remand is warranted under sentence six of 42 U.S.C. § 405(g).

## II. REPORT

### A. Procedural History

Plaintiff alleges that she became unable to work on January 1, 2002. (Tr. 19.)  The Commissioner initially denied Plaintiff's disability application on May 2, 2008. (Tr. 84.)  Plaintiff then filed a request for a hearing, which was held on January 21, 2010 before Administrative Law Judge, Michael F. Wilenkin, who considered the case *de novo*.  (Tr. 54-76.)  Plaintiff was represented at the hearing by counsel.  (*Id.*)  Julia Tripi, Ph.D., an impartial vocational expert, also appeared and testified at the hearing.  (Tr. 65-70.)  In an April 15, 2010 decision, ALJ Wilenkin determined that Plaintiff was not disabled at any time from January 1, 2002, the alleged onset date, through December 31, 2008, the date last insured ("DLI"). (Tr. 26.)  The Appeals Council granted leave to review the ALJ's decision and, on January 21, 2011, determined that Plaintiff was not disabled though her DLI.  (Tr. 6-12.)  Plaintiff subsequently filed this suit on December 5, 2011. (Dkt. 1, Compl.)

### B. Background

 Plaintiff was 51-years old at the time of her amended onset date and 58-years old on her DLI.  (Tr. 66.)  Plaintiff graduated from high school and has two years of college education.  (Tr. 34.)  Plaintiff reported that the last time she worked, it was in real estate sales, working full-time from 2002 until 2006.[1]  (Tr. 34-35.)  Before that, Plaintiff worked for almost 30 years as a customer service representative at a bank.  (Tr. 35.)  Plaintiff testified that she became unable to work due to

---

[1] Plaintiff reported earnings in 2003 of $7,743.00, and in 2005 of $5,002.00.  (Tr. 21.)  The ALJ determined that these earnings did not rise to a level consistent with substantial gainful activity. (*Id.*)

2

hypertension and gout and that she could not "do anything physically on a regular basis because [she] would have to take time off." (Tr. 46.) She additionally testified that her energy was low and that she had to "lie down a lot afer [she] developed [] hepatitis." (*Id*.)

### 1. *Plaintiff's Testimony*

While working as a bank customer service representative, Plaintiff testified that her duties included researching customer complaints. (Tr. 36-37.) Plaintiff testified that she spent approximately half of the day on her feet. (Tr. 37.) Plaintiff testified that each customer complaint that she resolved took approximately 2-3 hours, and that she spent 90% of that time on her feet. (Tr. 44-45.) Plaintiff testified that she stopped working at the bank in 2000. (Tr. 46.)

Plaintiff indicated that she was first diagnosed with gout in the late 1990s. (Tr. 46.) Plaintiff testified that she experienced gout-related flare-ups every 3-4 months. (Tr. 48.) The flare-ups typically lasted approximately two weeks and then went away. (*Id*.) During the flare-ups, Plaintiff's big toe and hand swell up. (Tr. 47.) Plaintiff also indicated that due to her liver condition, she was not able to take prescription medication for her gout flare-ups. (Tr. 48-49.) Plaintiff reported that she was taking prescription medication for her hepatitis. (Tr. 49.) Her symptoms included abdominal problems in the upper right quadrant approximately 3 times per month, which last a few seconds per episode. (Tr. 52-53.)

Plaintiff also testified to fatigue. (Tr. 54.) She indicated that she tired very easily and needed to lie down. (*Id*.) Plaintiff reported that her blood pressure was "fine," although she indicated that she experienced hypertension. (Tr. 55.) She reportedly told her doctor a few times that she felt dizzy when getting out of the shower, or after getting out of bed too quickly. (Tr. 55-56.) Plaintiff also reported experiencing headaches at the base of her head. (Tr. 57.) She also

reported difficultly sleeping at night. (Tr. 58.) Plaintiff testified that there was no improvement with her symptoms with the prescriptions that she has been taking. (Tr. 54.)

Plaintiff reported that she is ordinarily able to look after her personal needs including bathing, dressing, and feeding herself. (Tr. 59.) Although not daily, Plaintiff also indicated that she is able to take care of her own household chores. (*Id*.) Plaintiff testified that she liked to read and still goes to church. (Tr. 59-60.) Plaintiff testified that she used to walk, but her left knee now precludes that activity. (*Id*.) Additionally, Plaintiff testified that she can no longer attend Bible study classes. (Tr. 60.) Plaintiff reported that she could walk to the corner of a block and back, but not around the block. (Tr. 61.) Plaintiff said that she could typically stand for 15 minutes before needing to sit, and could sit comfortably for at least 30 minutes without needing to change position. (*Id*.) Plaintiff testified that she could squat down to pick up a towel that had fallen on the floor. (Tr. 64.) Plaintiff also testified that she would be able to get up and down a flight of stairs. (*Id*.) Plaintiff reported that she had no difficultly using her hands, except when she was experiencing a gout-related flare-up. (*Id*.) Plaintiff testified that she could lift and carry 10 pounds "comfortably, easily." (Tr. 65.)

### 2. Medical Evidence

On September 22, 2007, Plaintiff was admitted to the hospital with a severe case of jaundice and acute cholestasis, a condition where bile cannot flow from the liver. (Tr. 209.) Plaintiff also had a urinary tract infection. She was treated with medication and underwent a liver evaluation. (*Id*.) Plaintiff was diagnosed with drug-induced hepatitis which was thought to be secondary to

4

sulfa.  (*Id*.)  Plaintiff additionally had underlying hypertension and bradyarrhythmia[2]. (*Id*.) Plaintiff's medical status improved and she was discharged on October 2, 2007.  (*Id*.)

Records from Plaintiff's follow-up visits indicate that her condition continued to improve. For example, at a November 19, 2007 follow-up, Plaintiff reported feeling better.  (Tr. 279.) Plaintiff's pruritus (i.e., itching) was well-controlled with medication.  (*Id*.)  Plaintiff denied any abdominal pain, confusion, or bleeding.  (*Id*.)  At a December 3, 2007 follow-up, Dr. Larry Wickless, D.O. indicated that Plaintiff was "feeling better" and her "pruritus [was] nearly resolved." (Tr. 274.)  As a result, Dr. Wickless advised that Plaintiff could discontinue her medication at her convenience. (*Id*.) During this visit, Plaintiff denied any chest plain, difficulty breathing, abdominal pain, swelling, fever, chills, nausea or vomiting.  (*Id*.)

During a December 17, 2007 visit, Dr. Wickless noted that Plaintiff's drug-induced liver injury continued to improve.  (Tr. 270.)  Plaintiff denied any itching and reported that she was "feeling fine."  (*Id*.)  At a February 11, 2008 follow-up, Plaintiff  indicated that her condition had improved and that her jaundice had resolved.  (Tr. 264.)  Plaintiff was diagnosed with hypothyroidism, but there are no records specifically treating her for this condition.  (*See, e.g.,* Tr. 218, 220, 307-308, 360.)

On February 20, 2008, Plaintiff had a cardiovascular follow-up with Dr. Majid Qazi, D.O. (Tr. 298.) During this visit, Plaintiff reported that she was "doing very well." (*Id*.) Plaintiff denied any chest pain, pressure, or tightness.  (*Id*.)  She also denied shortness of breath, orthopnea, or paroxysmal nocturnal dyspnea.  (*Id*.)  She additionally denied dizziness, lightheadedness, or

---

[2]  Bradyarrhythmia is defined as any disturbance in the heart rhythm in which the heart rate is abnormally slowed, usually to less than 60 beats per minute in an adult.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 248 (31st ed. 2007).

syncope. (*Id*.) Dr. Qazi's impression was that Plaintiff's hypertension was "well controlled." (*Id*.) Dr. Qazi also noted that Plaintiff's "history of heptopathy with jaundice [was] currently stable." (*Id*.) Plaintiff followed-up with Dr. Qazi again on October 28, 2009, when he indicated that Plaintiff's hypertension was "well controlled" on medications. (Tr. 373.)

On April 29, 2008, a state agency medical examiner, Dr. Muhammad Mian, M.D., completed a "Request for Medical Advice" wherein he concluded that Plaintiff's condition was non-severe. (Tr. 312.) Dr. Mian also noted that a recent physical examination confirmed that Plaintiff had undergone a near complete recovery from her liver problem and that any gout problems were controlled with medications. (*Id*.)

Additionally, on May 1, 2008, state agency psychiatric specialist, Dr. Kokila Sheth, M.D., concluded that Plaintiff had no severe mental impairments. (Tr. 311, 315-328.) Dr. Sheth concluded that Plaintiff was mildly limited in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace. (Tr. 325.) Dr. Sheth determined that Plaintiff was depressed due to her general medical condition. (Tr. 318.) Dr. Sheth took into account a psychiatric report completed on April 17, 2008, which indicated a diagnosis of depressive disorder due to general medical condition and a GAF score of 60. (Tr. 308, 327.)

A series of office notes during 2008 and 2009 indicate that Plaintiff experienced continued improvement of her cholestasis and gout — Plaintiff was even at times asymptomatic. (*See, e.g.,* Tr. 332, 336, 349, 351, 357.) On May 19, 2009, Plaintiff complained of "mild fatigue" and Dr. Michael Biederman, D.O. reported that Plaintiff's cholestasis was improving and was controlled by medications. (Tr. 361.) On November 30, 2009, Dr. Biederman reported that Plaintiff continued to take Urso Forte for her cholestasis. (Tr. 376.) At this time, Plaintiff reported that on "rare

occasions" she would have a tinge of right-upper-quadrant pain.  (*Id.*)  Plaintiff's cholestatic enzymes were "markedly improved," though still slightly elevated.  (*Id.*)   Due to Plaintiff's improved condition, Dr. Biederman recommended that if Plaintiff's labs were normal that she could stop taking her cholestasis medication and just return for follow-up visits.  (*Id.*)

### 3. *Vocational Expert's Testimony*

Dr. Tripi, the vocational expert, testified that Plaintiff's past job as a bank customer service representative would be classified as light, semi-skilled based on Plaintiff's testimony as she performed the job; typically, though, it is classified as sedentary, semi-skilled.  (Tr. 66.)  She also classified Plaintiff's work in real estate sales as light, semi-skilled.  (*Id.*)  The ALJ asked the VE whether any skills from the real-estate position would transfer directly to any work at the sedentary level.  (*Id.*)  The VE indicated that the skills would transfer to work as an appointment clerk in a real estate office at the semi-skilled level, doing some telephone and receptionist work.  (*Id.*)  The VE testified that there were other jobs within the banking industry within the semi-skilled level, including customer service  clerk and loss charge card clerk.  (Tr. 67.)  In the Detroit area, the VE testified that there were approximately 2,000 jobs available for the three jobs combined, and 4,000 statewide.  (*Id.*)  For the specific jobs that would contemplate a transfer of the real estate sales skills, the VE testified that there would be approximately 500 jobs available in the Detroit area and 1,000 statewide.  (*Id.*)

The ALJ then asked the VE to consider the claimant as she presented and to assume her testimony was accurate.  (Tr. 67.)  The ALJ asked the VE whether Plaintiff could perform any of her past relevant jobs.  (*Id.*)  The VE responded, "my opinion would be she would not be able to return to her prior work or any other."  (Tr. 68.)  The VE offered the following basis for her opinion:

"I think the biggest barrier would be the issue of fatigue and the need to lie down intermittently throughout the day.  Now, certainly there are some transient pain issues, but the fatigue and the need to lie down would be the major ones in my opinion."  (*Id.*)  The ALJ then asked the VE how her answer would be affected if the record does not reveal a medically determinable necessity to lie down or otherwise be recumbent during the course of a typical work day.  (*Id.*)  The VE responded that under those circumstances, Plaintiff would be able to do sedentary type work, including Plaintiff's past banking work.  (*Id.*)

### C.  Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status), and Supplemental Security Income (for poverty stricken adults and children who become disabled) "are available only for those who have a 'disability.'"  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2002, the alleged onset date. (Tr. 21.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: hepatitis, fatigue, hypothyroidism, and adjustment disorder. (Tr. 21.)

At step three, however, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the applicable regulations. (Tr. 22.)

Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). (Tr. 23-24.)

Regarding step four, the ALJ concluded that Plaintiff could perform her past relevant work

as a bank customer representative. (Tr. 25.) The ALJ noted that this work did not require the performance of work related activities precluded by Plaintiff's residual functional capacity. (*Id*.)

At step five, the ALJ concluded that Plaintiff was not disabled at any time from January 1, 2002, the alleged onset date, through December 31, 2008 the date last insured. (Tr. 26.)

### E.  The Appeals Council's Findings

On January 21, 2011 the Appeals Council issued its decision wherein it agreed in large part with the ALJ's findings. (Tr. 6-12.) The Appeals Council agreed with the ALJ's findings at steps 1 and 2. (Tr. 9.) The Appeals Council also agreed with the ALJ that Plaintiff had severe impairments of hepatitis, fatigue, and hypothyroidism, and that these impairments did not meet or equal the requirements of a listed impairment. (*Id*.) The Appeals Council, however, disagreed with the ALJ's finding at step 2 that Plaintiff had a mental impairment of adjustment disorder, noting that the "B" criteria ratings equate to a finding of no severe mental impairment in accordance with 20 CFR 416.920(a)(1). (Tr. 9-10.) The Appeals Council adopted the ALJ's finding that Plaintiff had the residual functional capacity to perform a full range of sedentary work. (*Id*.) It further found that Plaintiff's combination of impairments limited her ability to perform work-related activities in the following ways:  lift no more than 10 pounds at a time, occasionally lift and/or carry articles like docket files, ledgers, and small tools, as well as stand or walk 2 hours in an 8 hour day. (Tr. 10-11.) The Appeals Council considered Plaintiff's statements concerning her subjective complaints and adopted the ALJ's conclusions in that regard. (*Id*.) The Appeals Council also adopted the ALJ's findings that the Plaintiff could return to her past relevant work as a bank customer service representative, specifically noting that any restrictions in her ability to perform work-related activities did not affect her ability to return to work. (*Id*.)

10

### F. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal

11

quotation marks omitted)).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

### G.  Analysis

In her motion for summary judgment, Plaintiff argues that the ALJ erred as follows in determining she was not disabled: 1) the ALJ selectively examined the medical evidence of Plaintiff's symptoms of liver damage; 2) the ALJ's determination that Plaintiff's adjustment disorder only resulted in mild restrictions of daily living and concentration, persistence or pace is not supported by substantial evidence; 3) the ALJ's adverse credibility determinations are not supported by substantial evidence; and 4) the ALJ's findings that Plaintiff could return to her past work is not supported by substantial evidence.  For the reasons stated below, this Court disagrees.

Plaintiff has also filed an ex parte motion to complete the record on appeal.  (Dkt. 16.)  She seeks to add a letter from her treating physician, Dr. Biederman, to the administrative record.  For the reasons stated below, this Court concludes that a remand under sentence six of 42 U.S.C. § 405(g) is not warranted.

1.   *The ALJ Did Not Selectively Examine The Medical Evidence of Liver Damage.*

Plaintiff argues that the ALJ selectively examined the medical record regarding Plaintiff's symptoms of liver damage.  (Pl.'s Mot. Summ. J at 23-24.)  Plaintiff specifically contends that the ALJ erred by focusing on her reports of feeling better and a November 2009 treatment note indicating that Plaintiff could stop medicating with Urso Forte.  (*Id*. at 24.)  Plaintiff also contends that because she is still taking Urso Forte, the subject of her motion to complete the record, the ALJ's conclusion must be erroneous.  (*Id*.)  Additionally, Plaintiff states that the ALJ placed too much emphasis on a non-examining physician, who determined that Plaintiff's condition was non-severe.  (*Id*.)  The Commissioner counters that the ALJ's conclusions are consistent with the longitudinal medical record.  (Def.'s Mot. Summ. J at 6-8.)

The Court has reviewed the evidentiary record and agrees with the Commissioner that the ALJ's disability decision is supported by substantial evidence.  Following her October 2, 2007 hospitalization for drug-induced hepatitis, a series of follow-up notes indicate that Plaintiff's condition continued to improve.  (*See, e.g.,* Tr. 264, 270, 274, 279.)  In addition, the record also includes comments from Plaintiff reporting that her condition was improving.  For example, on December 3, 2007 Plaintiff reported that she felt better and denied any chest pain, difficulty breathing, abdominal pain, swelling, fever, chills, nausea, or vomiting.  (Tr. 274.)  Two weeks later, on December 17, Plaintiff reported "feeling fine" and denied any pruritus.  (Tr. 270.)  A series of office notes during 2008-2009 further confirmed continued improvement of Plaintiff's cholestasis. (Tr. 322, 336, 349, 351, 357.)  On May 19, 2009, Plaintiff's treating physician, Dr. Biederman, again reported that Plaintiff's cholestasis was improving and was being effectively controlled by medications.  (Tr. 361.)  On November 30, though still slightly elevated, Dr. Biederman noted that

13

Plaintiff's cholestatic enzymes were "markedly improved." (Tr. 376.) Dr. Biederman indicated that if Plaintiff's labs were normal that she could discontinue her cholestasis medication (Urso Forte), and just return for office visits. (*Id.*)

That Plaintiff continues to take Urso Forte does not preclude the ALJ from considering her overall medical improvement. Indeed, nowhere in Dr. Biederman's notes (including his most recent letter dated March 1, 2011) does he indicate that Plaintiff had a severe liver impairment, or that she was limited in any way by her condition during the relevant time period.

> 2.    *Substantial Evidence Supports the ALJ's and Appeals Council's Adjustment Disorder Findings*

Plaintiff next argues that the ALJ erred when he determined that her adjustment disorder resulted in only mild restrictions of daily living and concentration, persistence, or pace. (Pl.'s Mot. Summ. J, at 24-25.) Plaintiff recognizes that the Appeals Council reversed the ALJ's finding that her adjustment disorder was a severe impairment, but contends that decision was also error. (*Id.*) More specifically, Plaintiff asks the Court to find that her depression resulted in "moderate," not "mild" restrictions. In support, Plaintiff cites a GAF score of 60.[3] (Tr. 368.) However, GAF scores, to the extent they are probative, must be used in combination with the other evidence to develop the clinical picture. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 511 (6th Cir. 2006). Indeed,

---

[3] A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV*"), 30-34 (4th ed., Text Revision 2000). It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32.

A GAF of 51 to 60 corresponds to "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV* at 34.

the case law does not require an ALJ to give great weight to GAF scores. "A GAF score may help

an ALJ assess mental RFC, but it is not raw medical data." *Id. at* 503 n.7 In particular, "according

to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's

social and occupational functioning." *Id.* at 511; *see also DeBoard v. Comm'r of Soc. Sec.*, 211 F.

App'x 411, 415 (6th Cir. 2006). Further,

> GAF scores . . . are measures of both severity of symptoms *and*
> functional level. [*Am. Psychiatric Ass'n, Diagnostic & Statistical
> Manual of Mental Disorders* 32 (Text Revision, 4th ed. 2000)].
> Because the "final GAF rating always reflects the worse of the two,"
> *id.* at 33, the score does not reflect the clinician's opinion of
> functional capacity. Accordingly, "nowhere do the Social Security
> regulations or case law require an ALJ to determine the extent of an
> individual's disability based entirely on his GAF score." *Wilkins v.
> Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003) (citing *Howard v.
> Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Kornecky*, 167 F. App'x at 511 ("we

are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF

score in the first place.").

Plaintiff also cites the report of an examining psychiatrist who diagnosed Plaintiff with

depressive disorder due to her general medical condition. (Tr. 327.) However, this same

psychiatrist evaluated the "B" criteria and determined that Plaintiff's functional limitations were

"mild" in all areas, thereby lending further support to the Appeals Council's conclusion of no severe

mental impairment. (Tr. 9-10, 325.) Finally, Plaintiff indicates that her depression is confirmed by

her physicians. (Pl.'s Mot. Summ. J, at 25 (citing Tr. 368, 269-70).) The Court notes that the

records Plaintiff refers to in her motion do not discuss Plaintiff's depression. It is true that a review

of the record does indicate some casual mention of the word "depression" in her medical history;

however, the Court's independent review does not reveal anything that would suggest greater

15

functional limitations than those found by the ALJ and Appeals Council.  As such, the Court concludes that substantial evidence supports the Appeals Council's conclusion that the "B" criteria equate to a finding of no severe mental impairment.

### 3.   *Substantial Evidence Supports the ALJ's Credibility Determination*

Plaintiff also argues that the ALJ erred in assessing her credibility because the medical record supports her subjective complaints of pain.  She also asserts that the ALJ failed to provide sufficiently specific reasons for discounting her credibility.  (Pl.'s Mot. Summ. J, at 25-26.)

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  However, such a determination must be supported by subtantial evidence.  *Id.*; *see also* SSR 96-7p.  Moreover, an ALJ's credibility determinations must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  S.S.R. 96-7p; 1996 WL 374186 at *2.

In addition to objective medical evidence, when making a credibility assessment, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying factors).

16

The ALJ assessed Plaintiff's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant's testimony, when compared to the medical evidence of record and her presentation at the hearing, was considered exaggerated and self-serving.

(Tr. 24.)

Although this explanation is brief, the ALJ also supported his assessment of Plaintiff's credibility by citing records showing Plaintiff's improved condition. (Tr. 24 citing Ex. 4F, 11F & 13F). The Court has reviewed these records and finds that they support the ALJ's conclusion that Plaintiff's condition had improved. The ALJ correctly noted that as of May 19, 2009, Plaintiff's physician reported that her cholestasis was stable on a regiment of Urso Forte and she was without complaint. (Tr. 24 (citing 11F, p. 1).) Further, the ALJ correctly noted that only on rare occasions did Plaintiff report a tinge of right upper quadrant pain, and she denied any jaundice, icterus, nausea, or vomiting. (Tr. 24-25 (citing Ex. 13F, p. 1).) In August 2009, Plaintiff specifically reported that she had no complaints of fatigue, which the ALJ found consistent with the totality of the medical evidence revealing a significant improvement in her liver condition. (Tr. 25.) The ALJ also found significant that there were no medical opinions from Plaintiff's treating or consulting sources to consider. (Tr. 25.) Further, the state medical physician who reviewed the medical evidence, and evaluated Plaintiff, concluded that Plaintiff had no severe impairments and that she had made a near complete recovery. (*Id.* (citing Ex. 7F).)

In sum, this Court concludes that while the ALJ should have provided a more detailed

17

credibility analysis, it is clear that he reviewed the evidence consistent with 20 C.F.R. § 404.1529 and provided sufficient and supportable reasons for finding that Plaintiff's testimony about the limiting effects of her condition were not entirely credible.  As such, Plaintiff has not shown that the ALJ reversibly erred in discounting her credibility.

4.      *Substantial Evidence Supports the ALJ's Conclusion That Plaintiff Could Perform Her Past Relevant Work*

Plaintiff argues that the ALJ's conclusion that she could return to her past relevant work as a bank customer service representative is not supported by substantial evidence because: 1) the ALJ's hypotheticals were defective; 2) the ALJ mischaracterized her past work; 3) the ALJ did not consider whether Plaintiff needed a vocational adjustment; and 4) the VE's testimony does not constitute substantial evidence that jobs exist in the State of Michigan in substantial numbers at the sedentary exertional level.  (Pl.'s Mot. Summ. J, at 16-23.)

a.      The ALJ's hypotheticals

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 632 (6th Cir. 2004).   Plaintiff asserts that the ALJ's hypotheticals to the VE were not supported by the evidence.  (Pl.'s Mot. Summ. J, at 20.)

At the hearing, the ALJ asked the vocational expert to "take the [Plaintiff] as she presents this morning: A lady of advanced age indeed, very[,] very shortly approaching retirement age, possess[es] a past educational background, past relevant work experience described.  Assume if you would that her description of limitations is accurate."  (Tr. 67.)  The vocational expert responded

18

that due to Plaintiff's fatigue and the need to lie down intermittently throughout the day, she would not be able to return to her prior work or any other work.  (Tr. 68.)  The ALJ next asked the vocational expert to assume if the medical record did not reveal a medically determinable necessity to lie down or otherwise be recumbent during the course of a typical work day, how would that affect your answer?  (Tr. 68.)  The vocational expert responded that such an individual could perform sedentary work.  (*Id.*)  The vocational expert also testified that Plaintiff could perform her past relevant work as a bank customer representative.  (Tr. 68-69.)  When the ALJ asked if there were no medically determinable need for a sit-stand option, would Plaintiff be able to return to her past work as it is customarily performed and perform the other jobs that you have indicated that exists in the community?  The VE responded: "Correct."  (Tr. 69.)

Plaintiff primarily argues that the ALJ erred when he asked the VE to assume there was no medically determinable need for the sit/stand option because substantial evidence supports Plaintiff's on-going cholestasis and chronic fatigue.  (Pl.'s Mot. Summ. J, at 20.)  A VE, however, is acting within his or her purview to opine upon *assumptions* given to him or her by the ALJ, and the ALJ may later determine the evidence bears those assumptions out.  Moreover, an ALJ is not required to accept Plaintiff's subjective allegations, rather is it Plaintiff's duty to put forth evidence to substantiate her complaints.  20 C.F.R. § 404.1529(a).  As discussed above, substantial evidence in the record supports the ALJ's findings regarding the Plaintiff's functional limitations.  (*See also*, Tr. 227, 360 and 379 indicating that Plaintiff experienced "minimal," "mild," or "no" fatigue.)  The Court finds that the ALJ's hypotheticals to the VE accurately reflect what Plaintiff can and cannot do.

b.      Characterization of Plaintiff's past work

19

Plaintiff also claims the ALJ misconstrued Plaintiff's previous work as a bank customer service representative. (Pl.'s Mot. Summ. J, at 17-20.) Plaintiff now claims that her past relevant work is more accurately described as a "researcher." (*Id*. at 17.) But this claim is contrary to how she described her work during the hearing. Plaintiff testified that she was a customer service representative. (Tr. 35.) Moreover, Plaintiff was represented by counsel during the hearing, but failed to present any evidence suggesting that the ALJ or the VE had mischaracterized her past work, or that there was a discrepancy between her past work and the DOT. "[N]othing in applicable Social Security regulations requires the [ALJ] to conduct his or her own investigation into the testimony of a [VE] to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008); *see also Beinlich v. Comm'r of Soc. Sec*., 345 Appx. 163, 168-69 (6th Cir. 2009) ("The ALJ is under no obligation to investigate the VE's testimony beyond the inquiry mandated by SSR 00-4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief.").

The ALJ was reasonably entitled to rely on the VE's testimony because Plaintiff's counsel failed to cross-examine or challenge the VE's testimony concerning Plaintiff's past work. Plaintiff never attempted to clarify that she was a "researcher" as opposed to a "customer service representative" at the hearing, and, thus, any argument in this regard has been waived.

c.     Vocational adjustment

Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff's return to her past job would require a vocational adjustment due to the rapid increase in technological advances in the

banking industry.  (Pl.'s Mot. Summ. J, at 21.)  However, as noted above, the burden is on the

Plaintiff through step four of the sequential analysis to prove that she is disabled.  *See Preslar*, 14

F.3d at 1110.  Plaintiff did not put forth any evidence at the hearing or otherwise showing that her

past work has changed or, assuming change, that she would be unable to adjust to the changed

demands.  Under these circumstances, the ALJ did not err by not questioning the VE about whether

Plaintiff would require a vocational adjustment.

d.    Substantial jobs

Plaintiff's final argument is that the VE's testimony did not constitute substantial evidence

to support the ALJ's step five conclusion that sedentary jobs existed in substantial numbers.  (Pl.

Mot. Summ. J, at 22-23.)  As noted above, however, this Court has determined that the ALJ

reasonably concluded that Plaintiff could perform her past work as a bank customer service

representative at step four.  Therefore, even if Plaintiff is correct that there are insufficient,

alternative jobs that she could perform, the ALJ's error was harmless.

5.    *A Sentence Six Remand is Not Warranted*

In a subsequently filed ex parte motion to complete the record and remand pursuant to

sentence six of 42 U.S.C. § 405(g), Plaintiff contends that the Appeals Council should reopen its

January 21, 2011 decision for purposes of considering a report from her treating physician, Dr.

Biederman, dated March 1, 2011.  (Dkt. 16, Pl.'s Ex Parte Motion to Complete Record on Appeal)

Sentence six of §405(g) provides: "The court . . . may at any time order additional evidence

to be taken before the Commissioner of Social Security, but only upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence

into the record in a prior proceeding."  42 U.S.C. § 405(g).  Thus, as the statutory text indicates, a

21

sentence-six remand is only appropriate where a plaintiff can demonstrate that evidence not before the ALJ is "new" and "material," and that there was "good cause" for not producing the evidence earlier. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

Evidence is "new" only if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Further, "new" evidence must not be merely cumulative of evidence already part of the record. *Wilson v. Comm'r of Soc. Sec.*, No. 10-13828, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011); *see also Carroll v. Califano*, 619 F.2d 1157, 1161 (6th Cir. 1980) ("[W]here the issue in question has already been fully considered, further evidence on that point is merely cumulative").

"New" evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A corollary to this requirement is that "material" evidence must be "probative of the claimant's condition for the time period for which benefits were denied." *Wilson*, 2011 WL 2607098, at *6; *see also Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is . . . immaterial.").

Finally, a claimant shows "good cause" by providing a reasonable justification for failing to acquire and present the new and material evidence to the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). Good cause "contemplates more than strategic delay,

or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, No. 5:07CV 188, 2009 WL 700057, at *6 (W.D. Ky. Mar. 13, 2009) (internal citations omitted).

    Dr. Biederman's March 1, 2011 letter states in its entirety:

> This is to advise you, I am treating Mrs. Davis Byrd for chronic idiopathic cholestasis. Her treatment consists of Urso [F]orte 500 mg b.i.d. As far as prognosis in this disease, it is unknown and she is at risk to develop cirrhosis. She is being followed with imaging testing, i.e., ultrasound and/or CT and serial laboratory test.
>
> I hope this information will help. If you have any questions, please do not hesitate to contact me.

(Pl.'s Ex Parte Motion to Complete Record on Appeal, Ex. 3.)

    Even assuming Dr. Biederman was unable to provide such a letter at the time of the ALJ's April 15, 2010 decision, the Court concludes that the letter is not material. In particular, it is not probative of Plaintiff's condition during the relevant time period; rather, it focuses on Plaintiff's physical condition as of March 2011 and on her prognosis after that date. *See Casey v Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry."); *see also McCracken v. Comm'r of Soc. Sec.*, No. 1:08-CV-327, 2009 WL 2983049, at *3 (S.D. Ohio Sept. 14, 2009) ("[M]edical evidence obtained after Plaintiff's insurance status expired is not relevant, except perhaps to the extent that it relates back to the covered period." (internal citation omitted). As such, this evidence does not present a reasonable probability that the ALJ's decision would change.

### H. Conclusion

    For the foregoing reasons, the Court finds that the Commissioner's determination that Plaintiff is not disabled is supported by binding precedent and substantial evidence. Accordingly,

the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.  The Court further RECOMMENDS that Plaintiff's ex parte motion to complete the record on appeal be DENIED because Plaintiff has failed to establish that a remand is warranted under sentence six of 42 U.S.C. § 405(g).

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge.  E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


                                        s/Laurie J. Michelson_____
                                        LAURIE J. MICHELSON
                                        UNITED STATES MAGISTRATE JUDGE


Dated:  January 10, 2013

24

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 10, 2013.

s/Jane Johnson
Deputy Clerk